**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JOHN A. REED,** **Plaintiff** | ) | |
| **v.** | ) | |
| **COLLECTOR'S UNIVERSE, INC., dba PROFESSIONAL SPORTS AUTHENTICATOR, a Delaware Corp. Michael S. Gutierrez, and James J. Spence,** **Defendants** | ) | **CASE NO.: 1:22-cv-05804** |

## COMPLAINT

### Jurisdiction

1. Plaintiff, John A. Reed, is a citizen of the Village of Shorewood, County of Will and the State of Illinois.

2. Defendant, Collector's Universe, Inc. d/b/a Professional Sports Authenticator, herein after, "PSA" is a corporation incorporated under the laws of the State of Delaware, and has its offices in California, New Jersey, Paris, Hong Kong, Shanghai and Tokyo, Japan. Defendant does business in the State of Illinois but upon information and belief does not maintain an office in Illinois. *See* *www.psacard.com/about.* Professional Sports Authenticator (PSA) is the largest and most trusted third-party trading card authentication and grading company in the world. *See* *www.psacard.com/about.* Since its inception in 1991, PSA has certified over 40 million cards and collectibles with a cumulative declared value of over a billion dollars. As the only third-party grading service to offer a guarantee on its services, PSA has emerged as the clear leader in authentication and grading for trading cards and other collectibles. *See* *www.psacard.com/about.*

3. Michael S. Gutierrez is an individual residing at 23974 N 74th Place, Scottsdale Arizona 85255.

4. James J. Spence is an individual residing at 8 Washington Valley Road, Morristown, New Jersey 07960.

5. The Plaintiff seeks damages in excess of $100,000.00.

6. Jurisdiction is appropriate pursuant to U.S.C., Title 29, §1332, Diversity of Citizenship.

7. Venue is appropriate in this Court.

## FACTS

8. Plaintiff, purchased numerous items from Mastro Fine Sports Auctions on November 20, 1999. ***See Attached Exhibit 1.***

9. One of those items is specifically identified as number 627 "Babe Nails Another." Item 627 carried a purchase price of $11,000.00. Another autographed Babe Ruth Ball, "Babe Solo" was purchased at the same time, item 1255.

10. Upon information and belief, the ball was authenticated by both Michael S. Gutierrez and James J. Spence.

11. Upon information and belief, in November of 1999, James Spence and Michael S. Gutierrez acted in their individual capacity as authenticators of sports memorabilia. Upon information and belief, sometime thereafter James Spence and Michael S. Gutierrez became agents of defendant, PSA.

12. Another of those items was identified as number 1255 "Babe Solo" with a purchase price of $10,447.00.

13. Upon information and belief, each of the balls were individually signed by Babe Ruth.

14. Both balls, 627 and 1255, were certified as authentic by Michael S. Gutierrez and James J. Spence. ***See Attached Exhibit 2.***

15. Plaintiff would not have purchased the Babe Ruth ball in question without the certification performed by Michael S. Gutierrez and James J. Spence.

16. The Babe Solo ball was sold in 2003 for a gross total of $20,375.00.

17. PSA certified both balls as authentic. The Babe Nails Another Ball, received a Letter of Authenticity dated March 26, 2003, re: CU13926, Certification B21459. ***See Attached Exhibit 3.***

18. The ball, Babe Nails Another, item 627, in question has remained in the Plaintiff's safety deposit box from 2003 until the fall of 2021, when Plaintiff decided to place the ball for sale.

19. The ball was sent to Heritage Auctions in Dallas, Texas to list for sale via their auction services.

20. Upon information and belief, the ball was sent by Heritage Auction to PSA for re-certification. At that time, PSA determined the ball to be inauthentic.

21. At some time thereafter, PSA issued a deactivation notice regarding certification B21459. ***See Attached Exhibit 4.***

22. Thereafter, the Plaintiff and Grey Flannel Auctions entered into an agreement for Grey Flannel to list the Babe Ruth autographed ball for sale at one of its auctions.

23. Grey Flannel Auctions assigned the Babe Ruth autographed ball Lot # 262, which was to end on December 11, 2021.

24. Bidding on December 10, 2021, exceed $30,000.00 for the ball. Plaintiff estimates that a third-party bidder would have bid in excess of $75,000.00 to purchase the Babe Ruth Ball.

25. Upon information and belief, Kevin Leland is an agent or employee of PSA.

26. Kevin Leland called Grey Flannel Auctions on or about December 10, 2021 and requested that the Babe Ruth Autographed ball be removed from the auction.

27. At all times relevant herein, Kevin Leland was acting in his capacity as an employee of Defendant, PSA.

28. The anticipated sale price of the ball was in excess of $75,000,00.

29. The Plaintiff called PSA and customer service hung up on him.

30. On or about April 14, 2022, Plaintiff emailed both Kevin Leland and Kevin Keating at PSA.

31. At the request of PSA, on May 15, 2022, Plaintiff sent photos of the ball and a copy of the certification to PSA.

32. PSA has failed to respond to the Plaintiff's inquiry and has not received any correspondence from PSA since May of 2022.

33. PSA offers multiple assurances to its customers. Those assurances include:
    a. PSA is the largest and most trusted autograph authentication service in the world;
    b. With over 35 million collectibles certified, PSA authenticates a vast array of signatures, ranging from sports to history and entertainment;
    c. PSA Authenticity and Grade Guarantee is fundamental to PSA's reputation as the leading third-party authentication and grading service;
    d. Combining decades of experience with cutting-edge authentication techniques and a passion for the hobby, PSA continues to deliver a service collectors prefer.

34. Plaintiff had no way of knowing about Defendant's deception with respect to authenticating the Babe Ruth Ball.

35. Plaintiff would not have purchased the Babe Ruth Ball had he been aware of the deception.4

36. Within the time period of any applicable statutes of limitation, Plaintiff could not have discovered through exercise of reasonable diligence that Defendants were concealing the conduct complained of herein.

37. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect the scheme complained of herein, nor would a reasonable and diligent investigation have disclosed that the Defendants had misrepresented the authentication of the Babe Ruth Ball.

38. For these reasons, all applicable statues of limitation were tolled by operation of the discovery rule prior to the Plaintiffs auction being halted by Defendant, PSA.

39. Defendants were under a continuous duty to disclose to Plaintiff the truth regarding the grading and sale of altered items.

40. Defendants knowingly, affirmatively, and actively concealed the true nature of their practice with altered items.

41. Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

42. PSA has failed to honor its guarantee to Plaintiff

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.*

43. Plaintiff repeats and re-alleges paragraph 1-42 as though fully set forth herein.

44. This cause of action is brought pursuant to California Civil Code § 1750, et seq., The Consumers Legal Remedies Act.

45. Plaintiff constitutes a "consumer" within the meaning of the California Civil Code § 1761(d).

46. Defendant PSA's grading of cards for a fee constitutes a "transaction" within the meaning of California Civil Code §1761(e).

47. The authentication services purchased by Plaintiff constitute "goods" and "services" under California Civil Code §1761(a) and (b).

48. The policies, acts, and practices hereto for described were intended to result in the sale of services to the consuming public and violated and continue to violate §1770(a)(7) of the act, which prohibits, "representing that goods or services are of a particular standard, quality, grade, or that good are of a particular style or model, if they are of another," and Section 1770(a)(14), which prohibits, "representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

49. Defendants fraudulently deceived Plaintiff by representing that the Babe Ruth ball was authentic and unaltered and that they would guarantee the unaltered nature and authenticity.

50. Defendants' actions as described herein were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

## SECOND CAUSE OF ACTION - FRAUD

51. Plaintiff repeats and re-alleges paragraph 1-50 as though fully set forth herein.

52. Defendants have engaged in numerous acts and omissions that constitute fraudulent concealment.

53. Defendants concealed the fact that there is something wrong with the Babe Ruth Ball and still refuse to inform Plaintiff.

54. On information, Defendants knew there was something wrong with the Babe Ruth Ball when their certifications were made.

55. Defendants had a duty to disclose to Plaintiff the truth about the Babe Ruth Ball.

56. Plaintiff relied on the Defendants to his detriment.

57. The representations made by Defendants were material as Plaintiff would not have purchased the Babe Ruth Ball without the certifications.

58. Thereafter, PSA re-certified the Babe Ruth Ball as authentic but now has decertified the Babe Ruth Ball.

59. As a result of Plaintiff's reliance, he has been injured an amount to be proven at trial.

60. Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard of the Plaintiff's rights. Plaintiff is therefore entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION – TORTIOUS INTEREFERNCE WITH CONTRACT AGAINST PSA**

61. Plaintiff repeats and re-alleges paragraph 1-60 as though fully set forth herein.

62. The Plaintiff and Grey Flannel Auction had a valid and enforceable agreement to sell at auction the Babe Ruth Ball.

63. Kevin Leland, acting on behalf of PSA knew of the Grey Flannel Auction.

64. Kevin Leland on behalf of PSA, intentionally and unjustly induced Grey Flannel to stop the auction, thereby intentionally and unjustly ending Plaintiff's agreement with Grey Flannel Auction.

65. The actions of Kevin Leland's wrongful conduct caused Grey Flannel Auction to terminate the auction.

66. Plaintiff has suffered damages as a result of the breach of the agreement with Grey Flannel caused by PSA.

67. As a result of Defendant's interreference, Plaintiff has been injured an amount to be proven at trial.

**FOURTH CAUSE OF ACTION – TORTIOUS INTEREFERNCE WITH ECONOMIC ADANTAGE AGAINST PSA**

68. Plaintiff repeats and re-alleges paragraph 1-67 as though fully set forth herein.

69. Plaintiff had a reasonable expectation of selling the Babe Ruth Baseball at auction.

70. The Defendant, PSA, knew or should have know that Plaintiff expected to sell the Babe Ruth Ball.

71. Kevin Leland on behalf of PSA, intentionally and unjustly induced Grey Flannel to stop the auction, thereby intentionally and unjustly ending Plaintiff's expectation of selling the ball.

72. The defendant's interference prevented the plaintiff's legitimate expectancy from ripening into a valid business relationship with the third-party bidder.

73. As a result of Defendant's interreference, Plaintiff has been injured an amount to be proven at trial.

**FIFTH CAUSE OF ACTION BREACH OF WARRANTY**
**MICHAEL S. GUTIERREZ AND JAMES J. SPENCE**

74. Plaintiff repeats and re-alleges paragraph 1-73 as though fully set forth herein.

75. The defendant's certified the Babe Ruth Ball as authentic.

76. Plaintiff now does not know if the ball is authentic or not.

77. Defendants guaranteed the authenticity of the Babe Ruth Ball.

78. The authenticity has not come into question and Defendants have not responded to Plaintiff.

79. Plaintiff has been injured an amount to be proven at trial.

**SIXTH COUNT - VIOLATION OF ILLINOIS CONSUMER**
**FRAUD AND DECEPTIVE PRACTICE ACT AGAINST PSA**

80. Plaintiff repeats and re-alleges paragraph 1-79 as though fully set forth herein.

81. Defendant PSA is liable to Plaintiff for violation of the Illinois Deceptive Practices Act, 815 ILCS 505 for the following reasons:

    a. Knowingly making false and misleading statements regarding the quality and character of the ball;
    b. A continued pattern of deception; and
    c. Additional allegations as alleged above.

82. Plaintiff has been injured an amount to be proven at trial.

**JURY DEMAND**

83. Please take notice that Plaintiffs demand trial by jury in this action.

**REQUEST FOR RELEIF**

WHEREFORE, Plaintiff, John A. Reed, requests judgment against Defendants as follows:

a. An award of actual, statutory and punitive damages;
b. Pre-judgment and Post-judgment interest on all sums awarded;
c. An award of attorney fees and costs, as allowed by law;
d. Costs of this suit; and
e. Such other and further relief as is equitable, just and proper.

Plaintiffs, by and through their attorney,
Frankfort Law Group,

*/s/ Thomas W. Toolis*
Thomas W. Toolis

Thomas W. Toolis (ARDC No. 6270743)
Frankfort Law Group
10075 W. Lincoln Highway
Frankfort, Illinois 60423
(708) 349-9333
twt@jtlawllc.com

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF ILLINOIS )
) SS
COUNTY OF WILL )

Plaintiff John A. Reed, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well founded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorney which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

John A. Reed

Subscribed and sworn to before me
this 21 day of October, 2022

Notary Public

OFFICIAL SEAL
THOMAS W TOOLIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/11/24